UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SHINGLE SPRINGS BAND OF MIWOK
INDIANS, a federally recognized
Indian Tribe,

        Plaintiff,

   v.

SHARP IMAGE GAMING, INC., a
California corporation; NATIONAL
INDIAN GAMING COMMISSION; THE
HONORABLE PATRICK J. RILEY,
Judge of the El Dorado County
Superior Court (Retired, Sitting
By Designation),

        Defendants.
_____/

2:10-cv-01396 FCD GGH

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on defendants Sharp Image

Gaming, Inc. ("Sharp Image") and the Honorable Patrick J. Riley's

(the "Superior Court")[1] (collectively, "defendants") motions to

_____

[1]    Defendant Honorable Patrick J. Riley asserts (1) that
plaintiff has named an individual judge of the El Dorado Superior
Court as a defendant in order to avoid the Eleventh Amendment's
restriction on federal jurisdiction by individuals against States
or state agencies; and (2) that plaintiff's complaint seeks
                                       (continued...)

dismiss plaintiff Shingle Springs Band of Miwok Indians' (the "Tribe" or "plaintiff") complaint on the basis that it is barred by the Anti-Injunction Act, or alternatively, that the court should abstain from exercising jurisdiction over the claims under the principles set forth by <u>Younger v. Harris</u> and its progeny. Plaintiff opposes the motion and moves for partial summary judgment on its claims for declaratory and injunctive relief. On October 8, 2010, the court heard oral argument. For the reasons set forth below, defendants' motions to dismiss are GRANTED, and plaintiff's motion for partial summary judgment is DENIED.

## BACKGROUND[2]

This case arises out of claims made by defendant Sharp Image with respect to contracts the Tribe and Sharp Image entered into in the mid-1990s. Specifically, Sharp Image alleges that (1) on or about May 24, 1996, the Tribe and Sharp Image entered into a contract known as the Gaming Machine Agreement (the "GMA");[3] (2) on or about November 15, 1997, the parties entered into an

---

[1](...continued)
relief against the entire Superior Court. As such, defendant Honorable Patrick J. Riley refers to himself as "the Superior Court," but expressly notes that this is not a waiver of sovereign immunity. (Def. Honorable Patrick J. Riley's Mot. to Dismiss, filed July 19, 2010, at 1 n.1.)

[2]    The factual background is taken from plaintiff's allegations in the Complaint as well as the parties' requests for judicial notice. While the parties file numerous objections to evidence, the court concludes that the disputed evidence is irrelevant to the court's determination or otherwise without merit.

[3]    On November 5, 1996, the National Indian Gaming Commission (the "NGIC") issued an opinion finding that the GMA contemplated illegal Class III gaming, and as a result, the GMA was "null and void." (Compl. ¶ 23.)

agreement known as the Equipment Lease Agreement (the "ELA");[4] and (3) on or about November 15, 1997, the parties entered into a third agreement known as the Promissory Note (collectively, the "Agreements"). (First Am. Compl. filed in Superior Court of California, County of El Dorado ("State Compl."), Ex. C to Compl., filed June 7, 2010, ¶¶ 5, 7.) Sharp Image contends that the Tribe breached the Agreements by, *inter alia*, entering into an agreement with a third-party for purposes of leasing or purchasing gaming equipment for the Tribe's casino in contravention of exclusivity provisions in the Agreements. (<u>Id.</u> ¶ 11.) The Tribe contends that the Agreements are void and unenforceable.

**A.   State Court Proceedings**

On March 12, 2007, Sharp Image filed suit against the Tribe in the Superior Court of California, County of El Dorado, alleging claims for breach of contract based upon the 1996 and 1997 agreements. (Compl. ¶ 29.) On May 22, 2007, Sharp Image filed its First Amended Complaint (the "State Complaint"), asserting that the Agreements are all "valid and binding contracts," which it had the right to enforce. (<u>Id.</u> ¶ 30.)

Subsequent to the filing of the lawsuit, on April 13, 2007, the Tribe sought review by the National Indian Gaming Commission (the "NGIC") regarding whether the GMA and ELA were unapproved "management contracts" that required but did not receive NIGC approval in violation of the Indian Gaming Regulatory Act (the "IGRA"). (<u>Id.</u> ¶ 31; Ex. G to Pl.'s Request for Judicial Notice

---

[4]    Sharp Image alleges that the ELA superseded the GMA in its entirety. (Compl. ¶ 25.)

("PRFJN"), filed Sept. 10, 2010.) On June 14, 2007,[5] the NIGC
issued an Advisory Opinion letter from the NIGC's General
Counsel, providing that the GMA and ELA were management contracts
that violated the IGRA. (Ex. I to PRFJN.)

On July 9, 2007, the Tribe moved to quash/dismiss the State
Complaint on the grounds of complete preemption and sovereign
immunity. (Compl. ¶ 32.) On September 12, 2007, Sharp Image
made an evidentiary objection to the June 14 Advisory Opinion,
contending that "the advisory opinion of the NIGC's General
Counsel . . . has no legal effect because it is not a final
decision of the agency." (Id. ¶ 33) (emphasis deleted). On
December 12, 2007, the Superior Court issued a ruling, concluding
that the June 14 Advisory Opinion had "no legal effect," did not
constitute "official agency action," and was, therefore, not
entitled to "judicial review . . . until the agency took a final
determinative action." (Id. ¶ 34; Ex. J to PRFJN.)

Consequently, on January 24, 2008, the Tribe requested the
NIGC to undertake a formal review of the GMA and ELA and make a
final agency determination. (Id. ¶ 35; Ex. K to PRFJN.) On July
18, 2008, the NIGC advised the parties that it would undertake a
formal review of the contracts to determine whether the GMA and
ELA were "management contracts" that violated the IGRA. The NIGC
also advised that it would "give Sharp an opportunity to share
its views on the subject" prior to making any decision. (Compl.
¶ 35; Ex. M to PRFJN.) By letter dated August 1, 2008, Sharp

---

[5]     Plaintiff's Complaint asserts that the letter was
issued on June 5, 2007. However, this conflicts with the
exhibits attached to the parties' submissions.

Image urged the NIGC to conclude that the GMA and ELA were not management contracts. (Compl. ¶ 37.) On April 23, 2009, the Chairman of the NIGC issued his "formal determination under 25 U.S.C. § 2711," finding that "each agreement individually is a management contract," but concluding that they were "void" for failure to comply with IGRA statutory requirements. (Id. ¶ 38; Ex. A to RFJN.) The Chairman noted that the determination was "subject to appeal to the full Commission under 25 C.F.R. § 539" and thereafter to "a federal district court under 25 U.S.C. § 2714." (Id.)

On May 21, 2009, Sharp Image appealed to the full Commission. (Compl. ¶ 40; Ex. P to PRFJN.) By letter dated June 5, 2009, the NIGC asserted that because it did not have the necessary Commissioners available to provide a full Commission review, the NIGC was "functionally unable to review" the appeal, and that the Chairman's final determination would become final action by the NIGC on June 20, 2009. (Compl. ¶ 41; Ex. S to PRFJN.) Sharp Image did not file any subsequent appeals to either the NIGC or in federal court. (Compl. ¶ 41.)

On September 11, 2009, the Superior Court heard oral argument on the Tribe's Motion to Quash/Dismiss on the basis of complete preemption and sovereign immunity. (Id. ¶ 42.) On November 30, 2009, the Superior Court issued its Order, concluding that the Agreements had been "terminated and/or cancelled" prior to the filing of the State Complaint on March 12, 2007 and well before the NIGC undertook review of the GMA and ELA between 2007 and 2008; thus, the Superior Court held that the Tribe's Motion to Quash/Dismiss on the basis of NIGC action must

be denied because the NIGC was without jurisdiction "to review, regulate, approve or disapprove" the GMA and ELA. (Ex. E to Compl., at 11-12.) Further, the Superior Court concluded that the decision of the Chairman of the NIGC was not "final action" and "must be disregarded" because (1) the decision violated the due process rights of Sharp due to unreasonable ex parte contacts between the Tribe's Chairman and the Chairman of the NIGC; and (2) the NIGC did not comply with fee requirements and time limits set forth in applicable statutes and regulations.[6] (Id. at 13-14.) As such, the Superior Court held that preemption did not apply. (Id. at 14.) The Tribe asserts that in reaching these conclusions, the Superior Court acted outside the scope of its authority. (Compl. ¶ 42.)

On December 15, 2009, the Tribe petitioned the California Court of Appeal, Third Appellate District, to overturn the Superior Court's decision. (Ex. A to Def. Superior Court's Request for Judicial Notice ("DRFJN"), filed July 19, 2010.) On January 21, 2010, the Court of Appeal denied the petition. (Id.)

On January 29, 2010, the Tribe petitioned the California Supreme Court to reverse the decision of the Court of Appeal declining to reverse the Superior Court's decision. (Id.; Ex. B

---

[6]     The Superior Court's order provides:

The NIGC did not require compliance with 25 C.F.R. 533.3 or 25 U.S.C.A. 2722 regarding items which must accompany a request for approval of a management contract, nor was the fee under subsection (i) required. In addition, the NIGC did not comply with the time limits for decision set forth in subsection (d) of the above referenced code section.

(Id. at 14.)

to DRFJN.)  On March 8, 2010, the California Supreme Court issued an order staying all proceedings in the Superior Court pending final determination of the petition.  (Ex. B to DRFJN.)  On March 30, 2010, the California Supreme Court dissolved the stay and denied the petition.  (Id.)

Thereafter, the Superior Court set the case for trial on November 1, 2010.  At the Tribe's request, however, the trial was continued until February 7, 2011.  (Decl. of Steven S. Kimball in Supp. of Def. Sharp Image's Opp'n ("Kimball Decl."), filed Sept. 24, 2010, ¶ 8.)

**B.   Federal Action**

On June 7, 2010, after the California Supreme Court denied its petition, the Tribe filed a Complaint for Declaratory and Injunctive Relief in this court.  Specifically, the Tribe seeks (1) a declaration that the NIGC's April 23, 2009 decision is binding final agency action that must be appealed to a federal district court; (2) a declaration that the Superior Court may not entertain an appeal of the NIGC's April 23, 2009 decision; (3) an injunction to prevent the Superior Court from hearing an appeal of the NIGC's April 23, 2009 action; and (4) a declaration that the NIGC correctly decided that the Agreements are unapproved management contracts, and thus, void.  The Tribe prays for relief in the form of:

    a.    a preliminary and permanent injunction directing and compelling Sharp immediately to cease and desist from challenging in the Superior Court the NIGC's final agency action declaring the Agreements unapproved management contracts;

    b.    a preliminary and permanent injunction directing and compelling the Superior Court to immediately cease and desist reaching the merits of Sharp's

substantive and procedural challenge to the NGIC's final agency action in the State Court Action;

c.  a preliminary and permanent injunction directing and compelling the Superior Court to vacate and reverse any prior order to the extent that it is consistent with federal law holding that final agency action by the NGIC is entitled to binding and preclusive effect unless and until it is successfully challenged in a United States District Court;

d.  a declaration that, notwithstanding any other relief that this Court may order, the Superior Court may not continue to maintain jurisdiction over Sharp's state court action in a manner that defies federal law mandating that the NGIC's April 23, 2009 decision that the Agreements are unapproved management contracts that violate IGRA is final agency action entitled to binding and preclusive legal effect unless and until Sharp successfully appeals the decision to a United States District Court;

e.  a declaration that the Superior Court lacks jurisdiction to reach the merits of, and is precluded by federal law from reaching the merits of, a substantive and procedural challenge to a final agency decision of the NIGC, which found the Agreements to be unapproved management contracts that violate IGRA, because only a United States District Court possesses jurisdiction to hear a challenge to the procedural or substantive merits of the NIGC's final agency decision;

f.  in the alternative to the foregoing relief, a declaration that the NIGC properly determined that the Agreements constituted unapproved management contracts that violate IGRA and that are thus void, and that no grounds exist to set aside the NIGC's decision under the APA; and

g.  such other relief as the Court deems just and proper.

(Compl., Prayer for Relief.)

**STANDARD**

**A.  Motion to Dismiss**

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that

8

the pleader is entitled to relief." <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. <u>Retail Clerks Int'l Ass'n v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949.

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." <u>United States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 129 S. Ct. at 1949. A pleading is insufficient if it offers mere "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. at 1952. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." Id. at 1949. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

10

**B. Motion for Summary Judgment**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to

11

support the complaint.  See Nissan Fire & Marine, 210 F.3d at 1107.  Instead, through admissible evidence the nonmoving party "must . . . set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).

**ANALYSIS**

**A.    Anti-Injunction Act**

Defendants move to dismiss plaintiff's complaint and oppose plaintiff's motion for partial summary judgment on the basis that this action is barred by the Anti-Injunction Act.  Plaintiff opposes the motion, arguing that the Anti-Injunction Act does not bar a federal court order from prohibiting a state court from violating exclusive jurisdiction over matters involving the regulation of gaming on tribal lands.

The Anti-Injunction Act provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.  Congress adopted this restriction on federal courts based on "the essentially federal nature of our national government."  Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 285 (1970).  "When this Nation was established by the Constitution, each State surrendered only a part of its sovereign power to the national government. . . . One of the reserved powers was the maintenance of state judicial systems for the decision of legal controversies."  Id.  As such, the Court acknowledged that from its formation, this country has had "two essentially separate legal systems," each of which "proceeds independently of the other with ultimate review" by the

12

Supreme Court of federal questions raised in either system. Id. at 286. Further, the Court observed that "[o]bviously this dual system could not function if state and federal courts were free to fight each other for control of a particular case." Id.

In effectuating the fundamental and vital role of comity in the formation of this country's government, the Anti-Injunction Act "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of the three specifically defined exceptions." Id. When it first interpreted the statute in 1955, the Court noted that it "is not a statute conveying a broad general policy for appropriate ad hoc application. Legislative policy is here expressed by a clearcut prohibition qualified only by specifically defined exceptions." Amalgamated Clothing Workers v. Richman Bros., 348 U.S. 511, 515-16 (1955). "Since that time Congress has not seen fit to amend the statute," and as such, the Court has adhered to the position that any injunction to a state court proceeding must be based on one of the specific enumerated statutory exceptions. Atl. Coast Line, 398 U.S. at 287.

The three statutory exceptions to the Anti-Injunction Act's bar on federal courts enjoining state court actions apply only when: (1) an injunction is "necessary in aid of [the federal court's] jurisdiction;" (2) Congress has expressly authorized such relief by statute;[7] or (3) an injunction is necessary "to

---

[7]    While the court notes that most analyses of the Anti-Injunction Act address the "expressly authorized" exception first, because plaintiff advanced the "necessary in aid of jurisdiction" exception as its first argument, the court
(continued...)

13

protect or effectuate [the federal court's] judgments."[8]   28

U.S.C. § 2283; <u>Alton Box Bd. Co. v. Esprit de Corp.</u>, 682 F.2d

1267, 1271 (9th Cir. 1982).   Moreover, the Court has cautioned

that "the exceptions should not be enlarged by loose statutory

construction."  <u>Atl. Coast Line</u>, 398 U.S. at 287.   Rather, it is

well established that the "exceptions must be narrowly

construed."  <u>Alton Box Bd. Co.</u>, 682 F.2d at 1271.   "Doubts as to

the propriety of a federal injunction against state court

proceedings should be resolved in favor of permitting the state

courts to proceed in an orderly fashion to finally determine the

controversy."  <u>Id.</u> (quoting <u>Vendo Co. v. Lektro-Vend Corp.</u>, 433

U.S. 623, 630 (1977)).

### 1.   Applicability of the Anti-Injunction Act

The Anti-Injunction Act applies not only to claims for

injunctive relief directed at a state court, but also to claims

for declaratory relief that have the same effect as an

injunction.  <u>California v. Randtron</u>, 284 F.3d 969, 975 (9th Cir.

2002); <u>Bank of Am., N.A. v. Miller</u>, No. Civ. S-06-1971, 2007 WL

184804, *2 (E.D. Cal. Jan. 19, 2007).   "[O]rdinarily a

declaratory judgment will result in precisely the same

_____

[7](...continued)
discusses the exceptions out of the conventional order.

[8]     Plaintiff does not raise any argument that the third
exception to the Anti-Injunction Act applies.  However, to the
extent plaintiff cites cases discussing it, an essential
prerequisite to application of the "relitigation" exception "is
that the claims or issues which the federal injunction insulates
from litigation in state proceedings actually have been decided
by the federal court."  <u>Sandpiper Village Condominum Ass'n, Inc.
v. Louisiana-Pacific Corp.</u>, 428 F.3d 831, 848 (9th Cir. 2005)
(quoting <u>Chick Kam Choo v. Exxon Corp.</u>, 486 U.S. 140, 147-48
(1988)).   This essential prerequisite is absent in this case.

interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." Samuels v. Mackell, 401 U.S. 66, 72 (1971) (noting that a declaratory judgment may serve as the basis for a subsequent injunction against state proceedings and may, standing alone, have the same practical impact as a formal injunction); H.J. Heinz Co. v. Owens, 189 F.2d 505, 508 (9th Cir. 1951) ("It is equally clear that no power to grant such injunctive relief can be created by casting a law suit as an action seeking both a declaratory judgment and an injunction."); cf. Amerisource Bergen Corp. v. Roden, 495 F.3d 1143, 1153 (9th Cir. 2007) (noting that "even if the [Anti-Injunction Act] applied to certain requests for injunctive relief – a remedy closely related to a formal injunction – it certainly does not apply to requests for money damages," which would arguably be the province of the Younger doctrine).[9] Furthermore, the Anti-Injunction Act applies even though an injunctions would be aimed at a litigant instead of the state court proceeding itself. Randtron, 284 F.3d at 975.

Through this case, plaintiff seeks a preliminary and permanent injunction directing and compelling both defendant Sharp Image and the Superior Court to cease and desist from determining the merits of the pending state litigation to the extent it challenges the NIGC's determination regarding the

[9] Contrary to plaintiff's representation in its reply, the Ninth Circuit's decision in AmerisourceBergen Corp. does not restrict application of the Anti-Injunction Act solely to "an injunction to stay proceedings." (Pl.'s Reply in Support of Mot. for Partial Summ. J. ("Pl.'s Reply"), filed Oct. 10, 2010, at 9-10.) Indeed, the Ninth Circuit expressly declined to express an opinion on this issue. AmerisourceBergen Corp., 495 F.3d at 1153 n.16.

Agreements between the Tribe and Sharp Image. Plaintiff also seeks a preliminary and permanent injunction directing the Superior Court to vacate and reverse any prior order relating to the dispute. This requested injunctive relief directed at the power of the Superior Court to adjudicate a pending action filed over three years ago falls squarely within the ambit of the Anti-Injunction Act.

Moreover, the declaratory relief sought by plaintiff in this case would have the same practical effect as the issuance of an injunction. Specifically, plaintiff seeks a declaration that the Superior Court may not continue to maintain jurisdiction over the pending state action as it relates to the validity of the Agreements and that the Superior Court lacks jurisdiction to reach the merits of that litigation. Alternatively, plaintiff asks the court to make its own determination with respect to the effect of the GMA and ELA contracts between the Tribe and Sharp Image, which the Superior Court has already done.[10] If issued, these declarations would impede the state court actions in the same manner as the requested injunctive relief.

Plaintiff argues that it is not seeking a stay of the state court action, but rather "an order that, in the course of litigating its state court claims, Sharp may not collaterally

_____

[10] The claim before this court, which seeks a determination of the validity of the NIGC decision under an APA analysis, is framed differently than the claim before the Superior Court, which determined whether federal preemption applied because of the NIGC decision. However, both of these claims necessitate a *judicial determination* of the effect of the NIGC's decision on the GMA and ELA. To the extent that principles of federalism and comity allow for a "race to judgment" in parallel state and federal proceedings, that race is over. (The state court clearly crossed the finish line first.)

attack the NIGC's final action." (Pl.'s Reply at 9.)  However,

plaintiff's argument proffers a distinction without a difference.

Plaintiff's position in the underlying state litigation is that

defendant Sharp Image's breach of contract claims must fail

because the NIGC concluded that the Agreements were void, and the

Superior Court does not have jurisdiction to review this

determination.  In this action, plaintiff seeks injunctive and

declaratory relief precluding any litigation relating to the

effect of the GMA and ELA and reversing certain prior Superior

Court orders regarding such agreements.  Such relief necessarily

has the effect of enjoining the Superior Court.[11]  The court

concludes that, absent an applicable statutory exception, the

relief requested by plaintiff is barred by the Anti-Injunction

Act.

## 2. Necessary In Aid of Jurisdiction

Generally, application of the "necessary in aid of

jurisdiction" exception to the Anti-Injunction Act is limited to

parallel state in rem, rather than in personam, actions.  See

---

[11]    Plaintiff contends that its requested relief does not
apply to all Agreements and that Sharp Image's claims with
respect to the Promissory Note are unaffected.  This contention
is irrelevant to the application of the Anti-Injunction Act,
which does not require that a requested federal injunction bring
a state suit to a complete halt.  See Winkler v. Eli Lilly & Co.,
101 F.3d 1196, 1201 (7th Cir. 1996).  Rather, the Supreme Court
has explained that the term "proceeding" is a comprehensive term,
which includes all parties to the state court action as well as
the court itself and all supplemental or ancillary actions.  Id.
(quoting Hill v. Martin, 296 U.S. 393, 403 (1935)).  As such, "a
federal injunction which falls short of bringing a state suit to
a complete halt may nonetheless violate the Anti-Injunction Act."
Id.; see also Dubinka v. Judges of the Superior Court of the
County of Los Angeles, 23 F.3d 218, 223 (9th Cir. 1994) (holding
that Younger abstention has not been limited to injunctions that
apply to entire proceedings).

17

*Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 641-42 (1977) ("The traditional notion is that in personam actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to § 2283 was meant to alter this balance."). The Supreme Court has noted that the language of this exception implies that "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line*, 398 U.S. at 295. As such, circuit courts have applied this exception where conflicting orders from different courts would only serve to make ongoing federal oversight unmanageable, *see Garcia v. Bauza-Salas*, 862 F.2d 905, 909 (1st Cir. 1988), or where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of consolidated, mulitdistrict federal litigation. *Id.*; *Carlough v. Amchem Products, Inc.*, 10 F.3d 189, 197 (3d Cir. 1993); *In re. Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985); *In re. Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334-35 (5th Cir .1981). However, "[t]he mere existence of a parallel action in state court does not rise to the level of interference with federal jurisdiction necessary to permit injunctive relief under the "necessary in aid of" exception." *Alton Box*, 682 F.2d at 1272-73.

Indeed, the Supreme Court has expressly excluded from the "necessary in aid of jurisdiction" exception cases that merely implicate preemption issues or exclusively federal rights. *Chick*

18

<u>Kam Choo v. Exxon Corp.</u>, 486 U.S. 140, 149 (1988). "[A] federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, *even when the interference is unmistakably clear*." <u>Id.</u> (quoting <u>Atl. Coast Line</u>, 398 U.S. at 294)) (emphasis added); <u>see</u> <u>NLRB v. Nash-Finch Co.</u>, 404 U.S. 138, 142 (1971) ("There is in the Act no express authority for the Board to seek injunctive relief against pre-empted state action."); <u>Alton Box</u>, 682 F.2d at 1273 ("The possibility that [a] state claim may be preempted by federal law is not sufficient of itself to invoke the second exception of the Act."). "This rule applies regardless of whether the federal court itself has jurisdiction over the controversy." <u>Atl. Coast Line</u>, 398 U.S. at 294.

Moreover, the Supreme Court has expressly rejected the argument that § 2283 "does not apply whenever the moving party in the District Court alleges that the state court is '*wholly without jurisdiction over the subject matter*,' having invaded a field pre-empted by Congress." <u>Amalgamated Clothing Workers</u>, 348 U.S. 511, 515 (1955); <u>Vendo</u>, 433 U.S. at 637 n.8 (discussing <u>Amalgamated Clothing Workers</u> and the Court's holding that "exclusive federal jurisdiction was not sufficient to render § 2283 inapplicable"). In <u>Amalgamated Clothing Workers</u>, the Court noted that in enacting the Anti-Injunction Act, Congress left no justification for the recognition of such an exception. 348 U.S. at 516. The court further reasoned that such an exception would not be easily applied as areas of law that are "withdrawn from

19

state power are not susceptible of delimitation by fixed meets and bounds. What is within *exclusive federal authority* may first have to be determined by this Court to be so." <u>Id.</u> (internal quotations and citations omitted). Moreover, "[t]o permit the federal courts to interfere, as a matter of judicial notions of policy, may add to the number of courts which pass on a controversy before the rightful forum for its settlement is established," including appellate review of the "collateral issue." <u>Id.</u> at 519. After underscoring its confidence in state courts to recognize the "demarcation between exclusive federal and allowable state jurisdiction," the Court held that exclusive federal jurisdiction does not provide an exception to the Anti-Injunction Act. <u>Id.</u> at 519, 521; <u>see</u> <u>Vendo</u>, 433 U.S. at 632, 635-39 (holding that even though § 16 of the Clayton Act provided a "uniquely federal right or remedy" that could only be brought in federal court, an exception to the Anti-Injunction Act was not warranted); <u>see also</u> <u>Texas Emp'rs Ass'n v. Jackson</u>, 862 F.2d 491, 498-99, 504 (5th Cir. 1988) (holding that a "complete lack of subject matter jurisdiction, due to federal preemption, comes within none of the exceptions to section 2283 and provides no basis for avoiding the prohibition of 2283").

"Rather, when a state proceeding presents a federal issue, even a pre-emption issue, the proper course is to seek resolution of that issue by the state court." <u>Chick Kam Choo</u>, 486 U.S. at 149; <u>see</u> <u>Tunica-Biloxi Tribe of La. v. Warbutron/Buttner</u>, No. Civ. A. 04-1516, 2005 WL 1902889, at *3 (D.D.C. July 20, 2005) ("California state courts are well within their authority to make such preemption determinations"). "[S]tate litigation must, in

view of § 2283, be allowed to run its course, including the
ultimate reviewing power in" the United States Supreme Court.
<u>Amalgamated Clothing Workers</u>, 348 U.S. at 521.  Further, if a
plaintiff believes a claim brought in state court is completely
preempted by federal law, "the appropriate course of action is to
seek removal of the action to the appropriate federal district
court in California." <u>Tunica-Biloxi</u>, 2005 WL 1902889, at *3.

In this case, plaintiff contends that the "necessary in aid
of jurisdiction" exception applies because of the exclusive
federal jurisdiction over Indian gaming under the IGRA.
Moreover, plaintiff contends that Sharp Image cannot challenge
the NIGC's action in state court, but rather must file an action
in federal court under the Administrative Procedures Act ("APA").
Both of these contentions amount to a complete preemption
argument that was raised and rejected by the Superior Court and
appealed to both the Court of Appeal and the California Supreme
Court.[12]

However, under Supreme Court precedent, the existence of
exclusive federal rights guaranteed by the IGRA is an
insufficient basis to invoke the necessary in aid of jurisdiction
exception, *even when the interference is unmistakably clear*."
<u>Chick Kam Choo</u>, 486 U.S. at 149; <u>see</u> <u>Vendo</u>, 433 U.S. at 639
("Given the clear prohibition of § 2283, the courts will not sit
to balance and weigh the importance of various federal policies
in seeking to determine which are sufficiently important to
override historical concepts of federalism underlying § 2283.").

---

[12]    Despite these vigorous protestations, plaintiff *never*
sought timely removal to federal court.

Rather, the appropriate avenue for relief is appeal through the state court system and, potentially, to the United States Supreme Court. See Atl. Coast Line, 398 U.S. at 296 ("Unlike the Federal District Court, this Court does have potential appellate jurisdiction over federal questions raise in state court proceedings, and that broader jurisdiction allows this Court correspondingly broader authority to issue injunctions 'necessary in aid of its jurisdiction.'"). Plaintiff sought such relief, appealing the Superior Court's decision regarding preemption to the Court of Appeal and California Supreme Court. It was only *after* such appeals proved unsuccessful that the Tribe sought to collaterally attack the Superior Court orders by review in a federal district court. This court finds that such a review would undermine the fundamental and vital role of comity the Supreme Court asserts is inherent in our federalism. See Atl. Coast Line, 398 U.S. at 286.

Plaintiff's reliance on the Ninth Circuit's decision in Sycuan Band of Mission Indians v. Roach, 54 F.3d 535 (9th Cir. 1995), is misplaced. In Sycuan Band, Indian tribes that operated gaming centers on their reservations sought a federal injunction and declaratory relief against California's criminal prosecution of individuals employed in the tribes' gaming centers. Id. at 537. The court held that because the IGRA, 18 U.S.C. § 1166(d), mandated exclusive federal jurisdiction over criminal enforcement of Class III state gaming laws in Indian country, the state proceedings were in derogation of federal jurisdiction. Id. at 540. However, the application of the "necessary in aid of jurisdiction" exception to exclusive federal jurisdiction over a

22

criminal prosecution as in <u>Sycuan Band</u> is clearly distinguishable
from application of the same exception to a civil matter.  Unlike
a civil litigant, a criminal defendant simply does not have the
option to remove a state criminal prosecution that he asserts is
preempted by federal law.  Unlike a civil litigant, a criminal
defendant may be subject to punitive sanctions as a result of a
state criminal prosecution, including imprisonment, during the
pendency of any appeal relating to a preemption defense.  As
such, the application of a narrow exception to the Anti-
Injunction Act may be warranted in the context of a criminal
prosecution exclusively entrusted to federal jurisdiction but
certainly alien to civil litigation.

Moreover, the particular criminal statute before the court
in <u>Sycuan Band</u> presented a unique issue with respect to the
federal court's ability to enforce the exclusive criminal
prosecution provision set forth in 18 U.S.C. § 1166.  <u>See</u> <u>Morongo</u>
<u>Band of Mission Indians v. Stach</u>, 951 F. Supp. 1455, 1466 (C.D.
Cal. 1997), judgment vacated and remanded for dismissal as moot,
156 F.3d 1344 (9th Cir. 1998).[13]  Under § 1166(a), Congress
provided that for purposes of the IGRA, all state law pertaining
to the licensing, regulation, or prohibition of gambling,
including state criminal prosecution for violations of such laws,
would apply in Indian country in the same manner and to the same
extent as they applied in the state.  However, § 1166(c) provided
that the United States has exclusive jurisdiction over criminal

_____

[13]  Even though the decision was vacated as moot, the court
finds the analysis instructive.  <u>See</u> <u>In re. SNTL Corp.</u>, 571 F.3d
826, 844 n.19 (quoting with approval a district court's decision
that was vacated as moot).

23

prosecution of violations of such state laws that were made applicable to Indian tribes under § 1166(a). Because the federal law expressly incorporated state law, and because a defendant cannot be prosecuted twice for the same offense, a federal court's power to enforce § 1166(c) would be "effectively crippled" unless a state court prosecution for violations of the incorporated state gambling law was enjoined. <u>Id.</u> (citing <u>Schiro v. Farley</u>, 510 U.S. 222, 229 (1994)). Such a unique situation, implicating the constitutional infirmity of double jeopardy, is not present in this case.

During oral argument, plaintiff emphasized that this case raises unique issues of exclusive federal jurisdiction, *not* simply preemption. Counsel pointed to language in <u>Sycuan Band</u>, 54 F.3d at 540, which noted that an injunction "was necessary to preserve exclusive jurisdiction." Plaintiff further relied on the holding in <u>AT&T Corp. v. Coeur d'Alene Tribe</u>, 295 F.3d 899 (9th Cir. 2002), which concluded that the state acted without jurisdiction in issuing warning letters because the federal district court had exclusive jurisdiction over any challenge to the validity of the NIGC's approval of management contracts. Presumably, based on plaintiff's argument, unlike concurrent federal/state jurisdiction, the apparently unique quality of exclusive federal jurisdiction conferred by Congress over Indian gaming law justifies application of the "necessary in aid of jurisdiction" exception; where the federal court has exclusive jurisdiction, the state court is *wholly without jurisdiction* and powerless to proceed. However, the court concludes that

plaintiff offers no applicable legal authority in support of this conclusion.

As set forth above, <u>Sycuan Band</u> is distinguishable, and <u>AT&T</u> never addressed the effect of "exclusive jurisdiction" on the Anti-Injunction Act.[14]  Rather, in <u>Amalgamated Clothing Workers</u>, the Supreme Court expressly found that a party's assertion that "a state court is *wholly without jurisdiction* over the subject matter" is an *insufficient basis* for applying an exception to the Anti-Injunction Act.  348 U.S. at 515 (emphasis added); <u>Jackson</u>, 862 F.2d at 498 ("Nor is the result any different because the federal preemption is such as to deprive the state court of *jurisdiction*") (emphasis in original).  Indeed, even if the state court mistakenly interprets that it has jurisdiction, state court litigation "must be allowed to run its course." <u>Amalgamated Clothing Workers</u>, 348 U.S. at 520-21 ("Misapplication of this Court's opinions is not confined to the state courts, nor are delays in litigation peculiar to them.").  Despite plaintiff's protestations that the Superior Court did not have jurisdiction to make any finding regarding the efficacy of the NIGC's determination, this court possesses no counter-vailing authority to collaterally enjoin the Superior Court's rulings with respect to the exercise of its jurisdiction, right or wrong.  Therefore, the court finds plaintiff's arguments unpersuasive.

The court does find the court's decision in <u>Jena Band of Choctaw Indians v. Tri-Millennium Corp., Inc.</u>, 387 F. Supp. 2d

---

[14]    Moreover, like <u>Sycuan Band</u>, <u>AT&T</u> also involved the application of § 1166(d), which the Ninth Circuit concluded preempted actions by states and their various Attorneys General. <u>Id.</u> at 909-10.

671 (W.D. La. 2005), persuasive.  In <u>Jena Band</u>, the defendants sued a federally recognized Indian tribe in state court for breach of contract arising out of agreements between the parties to develop a casino.  <u>Id.</u> at 673.  The tribe did not seek to remove the action, but brought suit in federal court seeking a declaration that the contracts were void as unapproved management contracts under the IGRA and that the state court lacked subject matter jurisdiction to hear the breach of contract claims.  <u>Id.</u> The federal court stayed its proceedings pursuant to the Anti-Injunction Act, and the state court subsequently ruled that it had subject matter jurisdiction over the parties' dispute.  The tribe then resubmitted its request that the federal district court issue a declaratory judgment that the state court was without jurisdiction to hear the defendant's breach of contract claim.  <u>Id.</u> at 674.  The district court held that the tribe had fully litigated the issue of subject matter jurisdiction before the state court, which had been appealed and upheld by the state appellate court.  Therefore, under principles of res judicata, the district court was bound by the state court's determination. <u>Id.</u> at 674-75 ("When the jurisdiction of a tribunal is actually brought into question in the proceeding before it, such tribunal has the power to determine its own jurisdiction, and once determined, whether right or wrong, that decision cannot ordinarily be attacked collaterally.") (internal quotations omitted).

The facts before the court in <u>Jena Band</u> are strikingly similar to the facts before the court in this case.  In both cases, defendants brought claims for breach of contract.  In both

cases, despite later raising the spectre of exclusive federal
jurisdiction under the IGRA, *plaintiffs failed to seek removal.*
In both cases, the tribes challenged the subject matter
jurisdiction of the state court and unsuccessfully appealed
adverse determinations to the state appellate court.  Just as the
Jena Band court determined that it was precluded from reviewing
the state court's conclusions regarding jurisdiction, this court
similarly finds that principles of equity, comity, federalism,
and res judicata preclude what is, at its core, a review of a
state court's determination of its jurisdiction over litigation.
See Alt. Coast Line, 398 U.S. at 296 ("[L]ower federal courts
possess no power whatever to sit in direct review of state court
decisions.").

Accordingly, the court concludes that the "necessary in aid
of jurisdiction" exception does not apply to plaintiff's claims.

**3.  Expressly Authorized**

"[I]n order to qualify as an 'expressly authorized'
exception to the anti-injunction statute, an Act of Congress must
have created a specific and uniquely federal right or remedy,
enforceable in a federal court of equity, that could be
frustrated if the federal court were not empowered to enjoin a
state court proceeding." Mitchum v. Foster, 407 U.S. 225, 237
(1972).  The federal statute need not expressly reference the
Anti-Injunction Act nor expressly authorize an injunction of a
state court proceeding.  Id.  "The test, rather, is whether an
Act of Congress, clearly creating a federal right or remedy
enforceable in a federal court of equity, could be given its

intended scope *only* by the stay of a state court proceeding."
Id. at 238 (emphasis added).

Plaintiff contends that the unique relationship between
Indian tribes and the United States and the preservation of
exclusive federal jurisdiction over Indian gaming supports a
federal injunction against the state court proceedings.
Specifically, plaintiff asserts that the Anti-Injunction Act does
not bar an Indian tribe from seeking an injunction authorized by
28 U.S.C. § 1362 because the United States, pursuant to its trust
relationship with the Tribe, could sue to invalidate unapproved
management contracts and obtain such an injunction.  (Pl.'s Reply
at 7.)

Section 1362 provides, "The district courts shall have
original jurisdiction of all civil actions, brought by any Indian
tribe or band with a governing body duly recognized by the
Secretary of the Interior, wherein the matter in controversy
arises under the Constitution, laws, or treaties of the United
States."  The Supreme Court has interpreted this section as
allowing an Indian tribe to bring claims that the United States
could have brought as trustee for a tribe, such as challenges to
state taxation of Indian tribes or actions to determine real
property rights.  Moe v. Confederated Salish and Kootenai Tribes
of Flathead Reservation, 425 U.S. 463, 473-74 (1976) (state
taxation); Arizona v. San Carlos Apache Tribe of Arizona, 463
U.S. 545, 566-67 (1983) (water rights); see Aqua Caliente Band of
Cahuilla Indians v. Hardin, 223 F.3d 1041 (9th Cir. 2000) (state
taxation); Fort Mojave Tribe v. Lafollette, 478 F.2d 1016, 1018
(9th Cir. 1983) (quiet title).  As such, there is federal

28

jurisdiction under § 1362 "whenever a covered Indian tribe is suing to protect federally derived property rights and the United States has declined to sue on behalf of the [Indian tribe]." 13D Wright, Miller, Kane, Amar, Federal Practice & Procedure: Jurisdiction & Related Matters § 3579 (3d ed. 2010). If an Indian tribe is standing in the shoes of the United States under § 1362, it is not barred from seeking an injunction to the extent the United States would not be barred from seeking an injunction. Moe, 425 U.S. at 474-75. The Supreme Court has held that the Anti-Injunction Act does not apply where the United States is the party seeking injunctive relief. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 226 (1957).

However, § 1362 "does not grant jurisdiction to every suit by a tribe where the United States could bring an action on behalf of the tribe under 28 U.S.C. § 175. Thus a simple contract dispute, raising no federal question is not within the statute." 13D Wright, Federal Practice & Procedure: Jurisdiction & Related Matters § 3579; see Gila River Indian Community v. Henningson, Durham & Richardson, 626 F.2d 708, 714 (9th Cir. 1980) (holding that § 1362 did not apply because "[t]here is nothing in the present case which suggests that the action is anything more than a simple breach of contract case").

Courts have noted that not every contract between a tribe and non-Indian contractor is subject to the IGRA. Am. Vantage Co. v. Table Mountain Rancheria, 103 Cal. App. 4th 590, 597 (2002) (citing Iowa Mgmt. & Consultants v. Sac & Fox Tribe, 207 F.3d 488, 489 (8th Cir. 2000); Calumet Gaming Group-Kansas v. Kickapoo Tribe, 987 F. Supp. 1321, 1325 (D. Kan. 1997)).

"Rather, IGRA regulation of contracts is limited to management contracts and collateral agreements to management contracts." Id. (citing 25 U.S.C. § 2711). If a contract is not construed by the NIGC to be a management contract, the contract falls outside of the preemptive effect of the IGRA. Id.

Further, if a contract is *void* because it is a management contract that has not been authorized pursuant to the statutory requirements of the IGRA, the breach of such an unauthorized contract does not implicate the IGRA. Rumsey Indian Rancheria of Wintun Indians of Cal. v. Dickstein, No. 2:07-cv-2412, 2008 WL 648451, at *4 (E.D. Cal. Mar. 5, 2008). Specifically, if agreements "are ultimately construed as *void* management contracts, they would be found to have never been valid contracts, and 'only an *attempt* at forming . . . management contracts. If that is the case, then [the] suit in no way interferes with the regulation of a management contract because none ever existed.'" Id. (quoting Gallegos v. San Juan Pueblo Bus. Dev. Bd., Inc., 955 F. Supp. 1348, 1350 (D.N.M. 1997)) (emphasis added). "It is a stretch to say that Congress intended to preempt state law when there is no management contract for a federal court to interpret . . . ." Casino Res. Corp. v. Harrah's Entm't, Inc., 243 F.3d 435, 439 (8th Cir. 2001).

In this case, § 1362 does not apply because, under either party's interpretation of the validity of the Agreements, the litigation is based on a contract dispute that fails to raise a federal question. To the extent defendant Sharp Image asserts that the Agreements are not management contracts or that the time

to challenge the contracts as management contracts has passed,[15] the IGRA is not implicated.  <u>See</u> <u>Am. Vantage Co.</u>, 103 Cal. App. 4th at 597.  Alternatively, to the extent plaintiff Shingle Springs asserts that the GMA and ELA are *void* as unapproved management contracts, the IGRA is also not implicated.  <u>Rumsey Indian Rancheria</u>, 2008 WL 648451, at *4.  As such, neither plaintiff's nor defendant's theory of the case raises a federal question.

Plaintiff contends that § 1362 nevertheless applies because the Tribe raises a federal question arising out of its request for review of the NIGC determination under the APA.[16]  Plaintiff, however, fails to cite any case where § 1362 has been applied to a Tribe seeking review of a *favorable* agency decision (which effectively divests a federal court of jurisdiction over the underlying matter).[17]  <u>Cf.</u> <u>Mescatlero Apach Tribe v. Rhoades</u>, 775 F. Supp. 1484, 1493 (D.N.M. 1990) ("[Section] 1362 specifically will not bar a claim for equitable relief from *adverse* agency or government action.") (emphasis added).  Indeed, the APA mandates

---

[15]    The Superior Court concluded that the NIGC did not have jurisdiction to review the GMA and ELA because those contracts had been terminated or cancelled prior to review.  The Superior Court also concluded that the NIGC did not comport with time limitations for review set forth in federal statutes and regulations.

[16]    At oral argument, plaintiff's counsel asserted that its claims were based upon the exclusive jurisdiction provided by the APA, not § 3162.  However, the APA, alone, does not constitute an exception to the Anti-Injunction Act.

[17]    <u>AT&T</u>, relied upon by plaintiff, is distinguishable.  <u>AT&T</u> involved management contracts *approved* by the NIGC and thus, regulated by the IGRA.  Conversely, in this case, the NIGC concluded that the GMA and ELA were *unapproved* management contracts, and thus, outside the purview of the IGRA.

that a court "compel agency action unlawfully withheld or unreasonably delayed" and "set aside agency action" that the court concludes is unlawful. 5 U.S.C. § 706. In the instant action, plaintiff does not seek a determination that the NIGC's action was unlawful, but rather an *affirmance* from this court that the NIGC action was lawful. The only basis for a live controversy lies in the Superior Court's refusal to give deference to the NIGC's determination and plaintiff's request that this court reverse that refusal. As such, plaintiff's unique APA claim is wholly enveloped by the state breach of contract claim, which simply fails to raise a federal question.

At its core, plaintiff's APA argument repackages the preemption argument the Tribe advanced under the "necessary in aid of jurisdiction" exception. Specifically, plaintiff asserts that federal courts have exclusive jurisdiction to review decisions of the NIGC under the APA, and thus, the Superior Court's decision denying the Tribe's Motion to Dismiss/Quash on preemption grounds was in error. In the absence of timely removal to federal court, the appropriate procedure for review is through the state court appellate system and potentially to the United States Supreme Court; a federal district court has no authority to review. The court declines to strain interpretations of § 1362 and the APA to allow the Tribe to do under one exception that which it could not under the other. See Atl. Coast Line, 398 U.S. at 287 ("[T]he exceptions should not be enlarged by loose statutory construction.").

Accordingly, the court concludes that the "expressly authorized" exception does not apply to plaintiff's claims.

32

## B. __Younger__ Abstention

Alternatively, defendant Sharp Image opposes plaintiff's motion for partial summary judgment on the basis that it should be dismissed pursuant to the prudential abstention doctrine set forth in __Younger v. Harris__, 401 U.S. 37, 43 (1971).[18]  Plaintiff asserts that __Younger__ abstention does not apply because the Superior Court has acted beyond its authority.[19]

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts."  __Younger v. Harris__, 401 U.S. 37, 43 (1971).  This desire is premised upon the fundamental and vital role of comity in the formation of this country's government and "perhaps for lack of a better and clearer way to describe it, is referred to by many as 'Our Federalism.'"  __Id.__ at 44.  Our Federalism demonstrates "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate

---

[18]  While, as set forth *supra*, the court concludes that the Anti-Injunction Act precludes plaintiff's claims, for the sake of completeness, the court also addresses defendant's arguments under __Younger__.

[19]  Plaintiff also argues that __Younger__ abstention does not apply because it is not seeking to enjoin all state court proceedings.  However, as set forth *supra*, in the court's discussion of the applicability of the Anti-Injunction Act, plaintiff's requested injunctive and declaratory relief would have the practical effect of enjoining most, if not all, of Sharp Image's claims in the Superior Court.  __See__ __Dubinka__, 23 F.3d at 223 (holding that __Younger__ abstention has not been limited to injunctions that apply to entire proceedings).

33

ways." Id. It represents "a system in which there is
sensitivity to the legitimate interests of both State and
National Governments, and in which the National Government,
anxious though it may be to vindicate and protect federal rights
and federal interests, always endeavors to do so in ways that
will not unduly interfere with the legitimate activities of the
States." Id.

Generally, the Supreme Court's decision in Younger and its
progeny direct federal courts to abstain from granting injunctive
or declaratory relief that would interfere with pending state
judicial proceedings. Younger v. Harris, 401 U.S. 37, 40-41
(1971); Samuels v. Mackell, 401 U.S. 66, 73 (1971) (holding that
"where an injunction would be impermissible under these
principles, declaratory relief should ordinarily be denied as
well"). The Younger doctrine "reflects a strong policy against
federal intervention in state judicial processes in the absence
of great and immediate injury to the federal plaintiff." Moore
v. Sims, 442 U.S. 415, 423 (1979). When federal courts disrupt a
state court's opportunity to "intelligently mediate federal
constitutional concerns and state interests" and interject
themselves into such disputes, "they prevent the informed
evolution of state policy by state tribunals." Moore, 442 U.S.
at 429-30.

While the doctrine was first articulated in the context of
pending state criminal proceedings, the Supreme Court has applied
it to civil proceedings in which important state interests are
involved. Id.; see Huffman v. Pursue, Ltd., 420 U.S. 592 (1975).
"The seriousness of federal judicial interference with state

34

civil functions has long been recognized by the Court. [It has] consistently required that when federal courts are confronted with requests for such relief, they should abide by standards of restraint that go well beyond those of private equity jurisprudence." Huffman, 420 U.S. at 603.

Therefore, in the absence of "extraordinary circumstances," abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims. See Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); see San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose, 546 F.3d 1087, 1092 (9th Cir. 2008) (noting that where these standards are met, a district court "may not exercise jurisdiction" and that "there is no discretion in the district courts to do otherwise"). "Where Younger abstention is appropriate, a district court cannot refuse to abstain, retain jurisdiction over the action, and render a decision on the merits after the state proceedings have ended. To the contrary, Younger abstention requires *dismissal* of the federal action." Beltran v. State of Cal, 871 F.2d 777, 782 (9th Cir. 1988) (emphasis in original).

### 1. Interference with Ongoing State Proceedings

Younger abstention is only implicated "when the relief sought in federal court would in some manner directly 'interfere' with ongoing state judicial proceedings." Green v. City of Tucson, 255 F.3d 1086, 1097 (9th Cir. 2001) (en banc) *receded from on other grounds by* Gilbertson v. Albright, 381 F.3d 965

35

(9th Cir. 2004).  "The mere potential for conflict in the results
of adjudications is not the kind of interference that merits
federal court abstention."  Id. (internal quotations and citation
omitted).  Rather, the system of dual sovereigns inherently
contemplates the possibility of a "race to judgment."  Id.
Rather, the relevant question is whether the relief requested in
federal court would "enjoin or 'have the practical effect of'
enjoining the ongoing state court proceedings."
AmerisourceBergen, 495 F.3d at 1152.

In this case, as set forth in Section A.1 in the court's
discussion of the Applicability of the Anti-Injunction Act, all
of plaintiff's claims and requested declaratory and injunctive
relief, if granted, would have the effect of enjoining pending
state court proceedings or reviewing issues already reached by
the state court.  The state court proceedings were initiated in
March 2007, over three years before the complaint was filed in
this case.  Further, the requested injunctive relief would be
impossible to enforce without violation of established principles
of federalism and comity.  Accordingly, the first element of
Younger abstention is present in this case.

    **2.  Important State Interests**

The interpretation and application of state common law
implicates important state interests.  See R.R. Comm'n of Texas
v. Pullman Co., 312 U.S. 496, 499-500 (1941) (noting that the
"last word" on the interpretation of state law issues from that
state's highest court); see also Tunica-Biloxi Tribe, 2005 WL
1902889, at *3.  Moreover, state courts are better qualified to
interpret the state's own common law.  Id.

36

In this case, the pending state actions involve, *inter alia*, common law breach of contract claims governed by California law. As such, California courts are best suited to determining the merits of these claims. See <u>Tunica-Biloxi Tribe</u>, 2005 WL 1902889, at *3 (holding that the second prong of <u>Younger</u> was satisfied where the defendants had filed a breach of contract claim in California state court, but the plaintiff filed a case in federal court to enjoin such proceedings on the basis that the issues raised in state court were completely preempted under the IGRA).

Plaintiff's contention that important state interests are not implicated because it is "readily apparent" that the state court is exceeding its authority is without merit. See <u>Sycuan Band</u>, 54 F.3d at 541 (holding that the second <u>Younger</u> element was not satisfied because the state "can have no legitimate interest in intruding on the federal government's exclusive jurisdiction to prosecute"); <u>Gartrell Const. Inc. v. Aubry</u>, 940 F.2d 437, 441 (9th Cir. 1991) ("No significant state interest is served where the state law is preempted by federal law and that preemption is readily apparent."). Specifically, plaintiff's argument is unpersuasive because its assertion that defendant's state law claims are completely preempted is not "readily apparent." As set forth above, the IGRA is not implicated to the extent that a contract is not a "management contract" or to the extent that a contract is void as an unapproved management contract. See <u>supra</u> Part A.3. Further, despite plaintiff's assertion that preemption is clear, the Superior Court denied the Tribe's motion on this

ground, and both the Court of Appeals and the California Supreme Court declined to reverse that decision.

Accordingly, the second element of <u>Younger</u> abstention is present in this case.

### 3. Adequate Opportunity to Present Federal Claims

"Minimal respect for state processes, of course, precludes any *presumption* that the state court will not safeguard federal constitutional rights." <u>Middlesex County Ethics Comm.</u>, 457 U.S. at 431. Rather, a federal court "should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 15 (1987).

In this case, plaintiff can, and did, raise preemption as a defense in the state court action. If plaintiff is dissatisfied with the Superior Court's action, it can, and did, appeal to the California Court of Appeals and the California Supreme Court. Ultimately, plaintiff can file a petition for review in the United States Supreme Court. <u>See</u> <u>Tunica-Biloxi Tribe</u>, 2005 WL 1902889, at *3 (holding that the third <u>Younger</u> element was satisfied where the plaintiff Indian tribe could raise preemption as a defense in the state court, appeal through the state system, and ultimately file a petition for review with the United States Supreme Court).[20]

Accordingly, the third element of <u>Younger</u> abstention is met in this case.

---

[20] If plaintiff believed defendant Sharp Image's claims were completely preempted, it could have sought removal to the appropriate federal district court. <u>See</u> <u>id.</u>

**CONCLUSION**

Therefore, for the foregoing reasons, defendants' motions to dismiss are GRANTED, and plaintiff's partial motion for summary judgment is DENIED. Specifically:

(1) Because the court concludes that the claims alleged and relief sought by plaintiff in this case falls within the purview of the Anti-Injunction Act, and because none of the narrow exceptions to the Anti-Injunction Act apply, defendants' motions to dismiss on the grounds that the complaint is barred by the Anti-Injunction Act is GRANTED, and plaintiff's motion for partial summary judgment is DENIED; and

(2) Because plaintiff's claims would interfere with ongoing state court proceedings that implicate important state interests and plaintiff has an adequate opportunity to pursue their federal claims in those proceedings, the court must abstain from adjudicating these claims pursuant to Younger v. Harris.

The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: October 15, 2010

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE